# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| SHOPPES OF MOUNT PLEASANT, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. CPU4-14-001415 |
| | ) | |
| J.M.L., INC. and LAWRENCE GILLEN | ) | |
| | ) | |
| Defendants | ) | |

Submitted: July 14, 2017
Decided: August 11, 2017

Josiah R. Wolcott, Esquire
Connolly Gallagher LLP
267 East Main Street
Newark, DE 19711
*Attorney for Plaintiff*

Lawrence Gillen
P.O. Box 674
Middletown, DE 19709
*Pro Se Defendant*

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION TO VACATE JUDGMENT

The underlying action in this matter was for breach of contract. Judgment was entered in favor of the plaintiff, Shoppes of Mount Pleasant, LLC (hereinafter "Shoppes") and affirmed in part by the Superior Court.[1] The defendant, Lawrence Gillen (hereinafter "Mr. Gillen"), brings the instant Motion to Vacate the judgment with respect to his individual liability.[2]

---

[1] Due to the large volume of prior writing on this matter, the Court will not provide a recitation of the facts and findings of the trial or post-trial actions. Those opinions may be found under the following citations: 2015 WL 3824118; 2015 WL 4755491; 2016 WL 6072367. For the purposes of the instant Motion, the most relevant fact is Mr. Gillen having signed a lease with Shoppes, which Mr. Gillen contends was done solely on behalf of J.M.L., Inc. and not as a personal guarantor. The Superior Court affirmed the judgment against Mr. Gillen, but reduced the damages awarded to Shoppes.

[2] Mr. Gillen's memorandum also raises an argument for sanctions against Shoppes' attorney for alleged violations of Rule 11. However, because this argument is not properly before the Court, the Court will disregard all allegations of Rule 11 violations. A Motion for Sanctions under Rule 11 requires the party raising the motion to describe the precise conduct at issue, with proper notice, and a reasonable opportunity to respond. Furthermore, as per Rule

On March 15, 2017, Mr. Gillen, acting through counsel,[3] filed the instant Motion.[4] Both parties provided initial briefing on the matter, and a hearing was convened on July 14, 2017. The Court heard oral argument from the parties and reserved judgment. This is the Court's Opinion and Order on the Motion to Vacate Judgment.

## STANDARD OF REVIEW

The standard for reviewing a Motion to Vacate Judgment is governed by Court of Common Pleas Civil Rule 60(b). It is in dispute whether the Court should address the instant Motion under Rule 60(b)(2) or Rule 60(b)(3).[5] However, this dispute is immaterial, as the underlying subject matter remains the same. Therefore, the Court shall analyze each Rule and determine which Rule governs the Motion. Regardless of the precise Rule, under established Delaware precedent, a "party moving to vacate a final judgment or order must show that they are entitled to relief under Rule 60(b) by a preponderance of the evidence."[6] Motions to vacate "are within the sound discretion of the trial court, and they are not to be taken lightly or easily granted."[7]

---

11(c)(1)(A), a "motion for sanctions under this rule shall be made *separately* from other motions or requests" (emphasis added).

[3] Counsel for Mr. Gillen was permitted to withdraw shortly after filing the instant Motion and a corresponding Motion to Stay.

[4] While the original Motion was ostensibly for both Mr. Gillen and the corporate entity, the Court has deemed the Motion withdrawn with respect to the latter, as Mr. Gillen has stated his intention to proceed *pro se*. Furthermore, Mr. Gillen permitted Shoppes to enter a default judgment against the corporate entity, with the sole issue at trial being Mr. Gillen's personal liability – the same argument that is at stake with the alleged newly discovered evidence. As the issue does not pertain to the corporate entity, there is no prejudice in not considering the Motion as it may relate to the corporate entity.

[5] Specifically, Mr. Gillen asserts the applicable standard is Rule 60(b)(3), on the grounds of the underlying allegation sounding in Shoppes' alleged fraud.

[6] *Butler v. Davis*, 2016 WL 3144556, at *1 (Del. Com. Pl. May 10, 2016).

[7] *Id.* (internal citations omitted).

2

## PARTIES' CONTENTIONS

Mr. Gillen argues Shoppes provided at trial a fraudulent copy of the lease between Shoppes and J.M.L., Inc. (hereinafter the "Lease"), which purported to include Mr. Gillen's signature as personal guarantor. Mr. Gillen maintains, as he did at trial, he did not sign as personal guarantor and the Lease did not include a provision for a personal guarantor. As proof of the fraudulent quality of the Lease, Mr. Gillen presented the Court with a copy of the Lease found in the files of the Office of the Alcoholic Beverage Control Commission (hereinafter the "OABCC"), which does not contain a line for a personal guarantor. According to Mr. Gillen, Shoppes "knew that they did not have a cause of action against [Mr. Gillen] so presented a forged lease in order to justify their fraudulent action[.]"

Mr. Gillen argues the applicable standard for his Motion is Rule 60(b)(3), on the grounds of fraud on the Court. Mr. Gillen's arguments all derive from the allegation of the Lease introduced at trial being fraudulent, which Mr. Gillen claims is sufficient in and of itself to warrant reopening the case for an evidentiary hearing, if not outright vacating the judgment. Lastly, Mr. Gillen asserts his delay in bringing the alleged fraud to the attention of the Court is due to his reliance upon the testimony introduced at trial, Mr. Gillen's need to care for his wife following a serious automobile accident, and a flood resulting in damage to his personal files.

Shoppes argues Mr. Gillen has failed to prove he was unaware of the lease filed with the OABCC or, at the very least, he failed to prove he could not have obtained a copy of the alternative lease through the exercise of due diligence. Shoppes further cast doubt on the veracity of the purported lease, as the bottom of the final page is cut off due to the last page being on letter-sized paper, while the rest of the lease is on legal-sized paper. Concerning the argument for fraud, Shoppes argues Mr. Gillen's Motion is conclusory in its suppositions of

3

Shoppes' alleged fraudulent conduct. While Shoppes does not evince a clear preference for applying either Rule 60(b)(2) or Rule 60(b)(3), Shoppes argues Mr. Gillen cannot be successful under either standard.

## DISCUSSION

Court of Common Pleas Civil Rule 60(b)(2) allows a party to move to vacate a judgment on the grounds of "newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b)[.]" To succeed, "a party must demonstrate that the newly discovered evidence could not have been discovered by the exercise of due diligence prior to the underlying order or judgment; that it is sufficiently material and relevant that it would probably alter the result of the proceeding; and that it is 'not merely cumulative or impeaching in character.' "[8]

Conversely, Rule 60(b)(3) permits a party to move to vacate on the grounds of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party[.]" The definition of fraud has been construed narrowly and limited to serious misconduct undermining the ability of the Court to function impartially.[9] Accordingly, "relief would be appropriate where a defendant with a valid legal defense was prevented from maintaining the defense by fraud, misrepresentation, or mistake."[10] The rationale for this application of the Rule has existed for more than a century:

> The ground for the exercise of this jurisdiction is that there has been no fair adversary trial at law. Consequently a distinction is made between fraud, accident, mistake and the like relating to the subject-matter of the action and similar elements relating to the conduct of the suit. Fraud relating to the subject-matter is not of itself sufficient ground for relief. Where it relates to the conduct

---

[8] *Wilson v. James*, 2010 WL 4514349, at *2 (Del. Super. Oct. 22, 2010) (internal citations omitted).
[9] *See Smith & Loveless, Inc. v. JJID, Inc.*, 2016 WL 3929867, at *10 (Del. Super. Jul. 15, 2016) (internal citations omitted).
[10] *Id.*

4

of the suit, as where it prevents a party from asserting his rights, there is no fair adversary proceeding, and equity will interfere. The courts commonly speak of the former class as intrinsic and of the latter as extrinsic, fraud, etc. Thus, it is generally said that it is extrinsic fraud, mistake and the like which are grounds for relief.[11]

The Superior Court summarized this rule as follows: "relief will not be granted for fraud, misrepresentations, or misconduct that would be revealed in the normal judicial process, but will be granted when fraud, misrepresentations, or misconduct impairs the judicial process itself."[12] Accordingly, the primary distinction between the newly-discovered evidence rule and fraud is whether the allegation was properly sifted through the adversarial process. Evidence supporting a prior allegation of fraud relative to the subject matter of the lawsuit must meet the standard under Rule 60(b)(2), whereas evidence of the wrongdoing of the parties in conducting the litigation undermines the fairness of the outcome and may be raised virtually at any time.

Mr. Gillen's position would lead to an illogical and easily exploited loophole in the Court's rules for vacating a judgment. Granting relief under this theory would require circular reasoning: because a plaintiff is alleged to have perpetrated a fraud, the defendant was precluded from proving plaintiff perpetrated a fraud. The defendant would need to utilize the new evidence to prove there was a fraud, and only by proving a fraud would the defendant justify utilizing the new evidence. Under Mr. Gillen's theory, any party raising fraud as a defense to liability will be entitled to a second bite at the apple upon discovery of evidence relating to the defense of fraud. There would be no requirement for diligence, as any defense of fraud would conceivably undermine the reliability of the judicial process. The Court cannot accept this theory, as it would lead to absurd and inconsistent results.

---

[11] *Id.* (quoting *Hudson v. Layton*, 107 A. 785, 787 (Del. Ch. 1919) (internal citations omitted)).
[12] *Id.*

5

Instead, the Court finds Rule 60(b)(3) to be limited to those circumstances where the alleged fraud was not subjected to testing through the presentation of evidence and the examination of witnesses. As suggested by Delaware precedent, the concern with fraud before the Court is conduct undermining the *process* and leading to an unreliable outcome, rather than an unperturbed process leading to an unreliable outcome. This interpretation is harmonious with the other grounds for relief under Rule 60(b), which require either reasonable diligence on the part of the movant or injury to the validity of the judgment. A failed defense is not an injury to the process, as the defendant was afforded a fair and reasonable opportunity to present and support the defense. The discovery of evidence to support the defense must logically fall under Rule 60(b)(2), particularly when the evidence merely buttresses an existing defense, rather than create grounds for a new theory of the case.

Accordingly, the Court will analyze the instant Motion under Rule 60(b)(2). Mr. Gillen therefore bears the burden of proving the following elements:

> [T]he newly discovered evidence has come to the [proponent's] knowledge since the trial; that it could not, in the exercise of reasonable diligence, have been discovered for use at trial; that it is so material and relevant that it will probably change the result if a new trial is granted; that it is not merely cumulative or impeaching in character; and that it is reasonably possible that the evidence will be produced at trial.[13]

The first prong hinges on whether Mr. Gillen knew of the OABCC lease prior to the trial. Both parties claim the other filed the lease with the OABCC. However, both parties concede knowing the OABCC had a copy of the lease, as a copy of the lease was required for the OABCC to process Mr. Gillen's application for a liquor license. Furthermore, Mr. Gillen stated

---

[13] *Albu Trading, Inc. v. Allen Family Foods, Inc.*, 2002 WL 531203, at *3 (Del. Super. Apr. 4, 2002) (citations omitted).

6

at the Hearing he knew there was a copy of the Lease in the OABCC file, but did not believe it would be any different and, therefore, did not subpoena the file.

On the second prong, Mr. Gillen has all but admitted he could have discovered the OABCC lease prior to the trial. Mr. Gillen admitted he simply did not believe that lease to be any different, leading him to forego that avenue of investigation. Mr. Gillen's initial brief on the Motion, filed by Mr. Gillen's former counsel, suggests the fault belongs to Mr. Gillen's former attorney. This is unavailing, as an attorney's negligence or misconduct will be imputed to the client.[14] The ease with which Mr. Gillen obtained the OABCC file for the purposes of this Motion emphasizes how easily he could have obtained the same file in advance of trial. Therefore, Mr. Gillen has failed to demonstrate he acted with reasonable diligence.

Assuming, *arguendo*, Mr. Gillen had acted with reasonable diligence, the Motion would nevertheless fail on other grounds. Mr. Gillen bears the burden of proving the materiality of the newly discovered evidence; the burden is high, as there must be a fair probability of the evidence changing the outcome of the trial. At best, the newly discovered lease provides three additional facts: the date is in a different format;[15] the signatures between the two leases all appear to be different; and the OABCC lease does not contain a provision for a personal guarantor. However, Mr. Gillen had previously raised the allegation of a forged signature. While the differences in dates and signatures may have bolstered his argument, it is far from likely there would have been any difference in the outcome – particularly because Mr. Gillen was not precluded from introducing other evidence of forgery at trial, such as a handwriting expert. The newly-discovered evidence rule is not a blank check for perfecting inadequately argued defenses and theories.

---

[14] *See Levey v. Brownstone Asset Management, LP*, 76 A.3d 764, 771 (Del. 2013).
[15] The date of execution on the Lease reads as 2/25, whereas the date of execution on the OABCC lease reads as 2/25/05.

7

Furthermore, the differences in the leases with respect to the existence of a signature line for a personal guarantor would not perfect Mr. Gillen's defense. Instead, it would simply suggest – at most – one party or the other had altered the document. Mr. Gillen would have borne the burden of proving Shoppes was the party at fault, while Shoppes would have argued the opposite conclusion. The matter would likely devolve into a question of credibility. This Court has previously determined credibility is in favor of Shoppes. This may have moved the needle closer to equilibrium, but it does not, by itself, tip the scales in favor of Mr. Gillen. Because the evidence does little more than raise an additional question for pondering, it cannot meet the burden established by Delaware precedent.

At best, Mr. Gillen's Motion raises one or two points to give the Court pause. However, pause is not sufficient grounds to award the drastic relief of vacating a judgment. Likewise, Mr. Gillen has not provided adequate grounds to justify an evidentiary hearing. Mr. Gillen's own statements in support of his Motion are unequivocally conclusory: "[Mr.] Gillen surmises that this version of the lease was generated at some point in time to wrongfully assign personal liability to him under the lease." Mr. Gillen's request for an evidentiary hearing is plainly intended to allow him to rehash the same arguments he made at trial while also supporting Mr. Gillen's conclusory allegations. Mr. Gillen seeks a hearing so that he "can establish the facts in the case and clearly establish that [Shoppes] submitted the fraudental [sic] lease and committed perjury at the initial trial."

It is Mr. Gillen's burden to prove he is entitled to relief under Rule 60(b)(2). The Court cannot make Mr. Gillen's case for him by questioning every piece of evidence, nor can the Court instruct Mr. Gillen on how to make his case. Simply stated, the Court is not satisfied, and Mr. Gillen has not provided reasonable proof, that Shoppes engaged in actual misconduct or

8

submitted fraudulent evidence. Likewise, the Court is not satisfied, and Mr. Gillen has not provided reasonable proof, that Mr. Gillen could not have discovered all of the evidence he seeks to introduce via the instant Motion. Expanding the record with an evidentiary hearing would merely permit Mr. Gillen a second opportunity to present the case he should have presented at trial. Such an outcome is well beyond the purpose of Rule 60(b). Therefore, the Court finds Mr. Gillen has failed to meet his burden of proving any reasonable grounds for relief under Rule 60(b).

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** this 11th day of August, 2017, that Defendant's Motion to Vacate Judgment is **DENIED.**

The Honorable Carl C. Danberg
Judge

cc:     Angelia McNair, Judicial Case Manager

9